UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN E. SNYDER,

        Plaintiff,

Case No. 1:05-CV-809

Hon. Gordon J. Quist

vs.

TROOPER LINCOLN MILLER,
*et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff filed a pro se civil rights action against defendants pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendant Van Buren County Sheriff's Department (the "Sheriff's Department") (docket no. 37).

    **I.**    **Plaintiff's Complaint**

Plaintiff's claims arise from his arrest on December 9, 2003 and his subsequent detention in the Van Buren County Jail. Plaintiff filed suit against six defendants: Michigan State Police Troopers Miller, Gorham and Sell; Covert Township Police Officer Freitag; South Haven Police Officer Thompson; and the Sheriff's Department. Officer Freitag is no longer a defendant, having been dismissed from this suit on November 28, 2006.

Plaintiff's suit is based upon his following allegations:

> On Dec. 9th, 03 in the village of South Haven, Van Buren Co. I was arrested and already in custody, handcuffed behind my back, helpless. When 5 officers used excessive force/improper police conduct, which caused injuries. These injuries have affected my ability to function normally, as I once did and could very well affect me the rest of my life.
>
> Also the Van Buren County Sheriff's Dept (Jail) denied me medical treatment

for 30 days even after numerous requests.

My rights were violated in both incidents and I didn't deserve either.

Compl. at ¶ V.

### II.     Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.    The municipal defendant

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff claims that the Sheriff's Department denied him medical treatment for 30 days. In its brief, the Sheriff's Department correctly points out that it is not a separate entity capable of being sued and that Van Buren County (the "County") is the true party in interest in this litigation. Under Michigan law, the sheriff and the jail administrator set policies for the county jails. *See Rushing v. Wayne County*, 436 Mich. 247, 260 (1990) ("the policies of the sheriff and the jail administrator regarding the operation of the jail were attributable to the county").

In *Marchese v. Lucas*, 758 F.2d 181, 189 (6th Cir. 1985), the Sixth Circuit reviewed the relationship between the sheriff and the county:

> The liability of [the County] rests on the failures of the Sheriff which we have previously described. It is clear that under the Michigan Constitution of 1963 Art. 7, Section 6, [the County] did not make policy for the Sheriff's Department. The Sheriff is, however, the law enforcement arm of the County and makes policy in police matters for the County. *See* Michigan Constitution 1963 Art. 7, Section 4. The County, through its Board of Supervisors, appropriates funds and establishes the budget for the Sheriff's Department. The Sheriff is elected by the voters of [the County]. No doubt he is responsible for enforcing state law and presumably federal law as well. But equally clearly he is not an official of the State of Michigan or of the federal government. He is, under the Constitution of Michigan, the law enforcement officer for [the County] with extraordinary power to select his deputies and enforce the law.
>
> We believe that the relationship between the County and the Sheriff's Department is so close as to make the County liable for the Sheriff's failure to train and discipline his officers and his ratification of the use of wanton brutality by members of his force which we have spelled out above.

*Marchese*, 758 F.2d at 188-89. *See, e.g., Vine v. County of Ingham*, 884 F. Supp. 1153, 1159 (W.D. Mich. 1995) ("under *Marchese*, although the County cannot be liable under respondeat superior for county law enforcement policies established by the Sheriff, the Sheriff, when sued in his official

capacity, *is* the County") (emphasis in original).

Accordingly, the court could dismiss plaintiff's claim against the Sheriff's Department on the ground that he has named an improper party. However, while the Sheriff's Department acknowledges that it is an improperly named party, it has briefed this matter and presented it to the court on behalf of the County. Given the close relationship that exists between the Sheriff's Department and the County, and the fact that plaintiff could simply amend his complaint to name the County as a defendant in place of the Sheriff's Department, I find it is in the interest of judicial economy to address the arguments raised in the Sheriff Department's motion.

**IV.    Plaintiff's Fourteenth Amendment claim**

It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). "Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (citation omitted).

In order to establish an Eight Amendment violation, the offensive conduct must reflect an unnecessary and wanton infliction of pain. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). A viable Eighth Amendment claim consists of an objective and a subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the infliction of serious pain. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See*

*Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Stemler v. City of Florence*, 126 F.3d 863, 865 (6th Cir. 1997), *quoting Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). *See Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 507 (6th Cir. 1996) ("[d]eliberate indifference" requires more than sloppy or even reckless oversights by the municipality). In *Farmer*, the Supreme Court held that a prison official could not be found liable under the Eighth Amendment unless: "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. Thus, deliberate indifference "entails something more than mere negligence," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause . . . ." *Whitley*, 475 U.S. at 319.

In order to state a claim against the County for violations of civil rights under § 1983, plaintiff must show an officially executed policy, or the toleration of a custom, that resulted in the deprivation of a constitutionally protected right. *See Doe*, 103 F.3d at 507; *Howard v. Calhoun County*, 148 F. Supp. 2d 883, 890 (W.D. Mich. 2001). A municipality can be held liable under § 1983 only if the risk of a constitutional violation resulted from "plainly obvious" inadequacies in the municipal policy. *See Stemler*, 126 F.3d at 865; *Howard*, 148 F. Supp. 2d at 891. A plaintiff

cannot ordinarily show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond. *See Stemler*, 126 F.3d at 865. To state a municipal liability claim under an "inaction" theory in the present case, plaintiff must establish: (1) the existence of a clear and persistent pattern of mistreatment of detainees; (2) notice or constructive notice on the part of the County; (3) the County's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the County's custom was the "moving force" or direct causal link in the constitutional deprivation. *See Doe*, 103 F.3d at 508.

In support of its motion, the Sheriff's Department has presented evidence through the affidavits of Lieutenant Chris Baker and Nurse Sharon Mullins. In his affidavit, Lieutenant Baker stated that he was a sergeant at the jail when plaintiff was in custody from December 10, 2003 through January 28, 2004. Baker Aff. at ¶¶ 2, 6, attached to defendant's brief as Exh. B. He also stated that plaintiff was seen by the nursing supervisor, Sharon Mullins, on December 12, 2003. *Id.* at ¶ 8.

In her affidavit, Sharon Mullins stated that she worked at the jail in December 2003 and January 2004 as a registered nurse. Mullins Aff. at ¶¶ 2-3, attached to defendant's brief as Exh. C. She received a kite from plaintiff on December 12, 2003 requesting to see a nurse. *Id.* at ¶ 5. Nurse Mullins stated that:

> I immediately saw [plaintiff] and performed a physical assessment. My physical assessment revealed some soft tissue injury and bruising to [plaintiff's] back. [Plaintiff] wanted me to state that his bruising was caused by the police during his arrest. I told him that I could not do that, because I did not know when the bruising happened; I could only state that he had a soft tissue injury to his back. I directed [plaintiff] to use warm compresses and ibuprofen for his back.

*Id.* at ¶ 6. In her opinion, the soft tissue injury and bruising was not a serious medical condition and did not require additional medical care at that time. *Id.* at ¶ 7.

Nurse Mullins had no additional contact from plaintiff until January 5, 2004, when plaintiff stated that he was having pain in his back and thought he noticed blood in his urine. *Id.* at ¶ 8. The nurse requested a urine sample, but plaintiff could not provide one. *Id.* She set up an appointment with Dr. John Spriegel on January 9, 2004, which was the next scheduled date for the doctor to be at the jail. *Id.* Dr. Spriegel saw plaintiff on that date, ordered back x-rays (which were negative), diagnosed low back pain and prescribed Darvocet N 100 for pain. *Id.* at ¶ 9. The doctor ordered a urine sample, but plaintiff was unable to provide one. *Id.* [1]

In addition, defendant has provided a portion of plaintiff's testimony that supports the affidavits. Plaintiff was admitted to the jail on December 10, 2003. At his deposition, plaintiff admitted that he first requested to see a nurse on December 12, 2003. Snyder Dep. at 100, attached to Sheriff's Department's Brief as Exh. E. Plaintiff also testified that the condition of his back while he was at the Michigan Department of Corrections (after he was released from the jail) was "pretty much the same" as when he was at the jail. *Id.* After his release from prison, plaintiff sought treatment from Dr. Charles H. Rhodes on December 1, 2005, December 13, 2005 and January 31, 2006. *Id.* at 92. Plaintiff testified that Dr. Rhodes diagnosed him as suffering from a back strain. *Id.* at 83, 92.

The facts as set forth in these affidavits and records do not establish that jail staff was deliberately indifferent to plaintiff's serious medical needs. Nothing in the record indicates that

---

[1] An x-ray examination from January 12, 2004 stated that plaintiff's lumbar spine "is within normal limits." X-ray result, attached to defendant's brief as Exh. D. This document was not identified by affiant.

plaintiff suffered from a serious medical need while he was detained at the jail (December 10, 2003 through January 28, 2004). Nurse Mullins responded to plaintiff's kite. The nurse did not consider plaintiff's complaint of blood in his urine to be a medical emergency requiring immediate medical treatment, and scheduled him to see a doctor within four days of his complaint. While plaintiff twice complained of blood in his urine, he failed to provide a urine sample. The doctor performed an x-ray, which was negative. While plaintiff claims that he suffers from a longstanding back problem due to the Sheriff's Department's actions, his personal physician has diagnosed him as suffering from nothing more than back strain.

In his response, plaintiff provided a narrative regarding his time at the jail and copies of various documents that appear to relate to his medical treatment. *See* docket no. 45. In his narrative, plaintiff makes vague assertions that he was urinating blood from December 10th through January 9th, and that his "requests both written and verbal were ignored, disregarded and denied by the Van Buren County jail." Plaintiff submitted various documents with his response including: a copy of his initial medical screening form;[2] a copy of an "Inmate Medical Request Form" dated January 20, 2004, in which he complains that he did not have his urine test completed; a copy of a "Van Buren County Jail Inmate Grievance Form" dated January 20, 2004, in which he complains that no one responded to a January 8th healthcare grievance;[3] and a copy of a medical chart from the jail, which indicates that he received Vicodin two or three times each day from January 9th through January 28th.

---

[2] Plaintiff points out that this copy of the form is not signed. However, the form identifies him as the subject of the screening. The only positive answer on the form is that plaintiff "appears to be under the influence of alcohol or drugs or has visible signs of withdrawal."

[3] Plaintiff did not provide a copy of the January 8th grievance.

These documents do not comply with the court rules regarding the submission of evidence in opposition to a motion for summary judgment. The narrative was not a sworn statement and does not qualify as a supporting affidavit under Fed. R. Civ. P. 56(e), which requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In addition, plaintiff has not authenticated any of the submitted documents or identified them in an affidavit. *See* Fed. R. Civ. P. 56(e) ("[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith"). Accordingly, plaintiff has not provided any evidence to rebut the statements set forth in the Baker and Mullins affidavits.[4]

Even if the court considered plaintiff's narrative and other papers as evidence sufficient to oppose a motion for summary judgment, plaintiff has not demonstrated that the Sheriff's Department or the County engaged in a "clear and persistent pattern" of failing to provide proper medical care to inmates at the jail. *See Doe*, 103 F.3d at 508. Procedures were in place to screen detainees and to provide medical professionals to determine the need for immediate medical examination and treatment. *See* Van Buren County Sheriff's Office Jail Policy attached to defendant's brief as Exh. B(1). For example, Policy No. 28 provides that "[a]ll inmates being booked into the Van Buren County Jail will be questioned about their health, following the medical

---

[4] Pro se litigants "are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a pro se complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991). However, a pro se litigant is not entitled to special consideration with respect to straightforward procedural requirements that a lay person can comprehend as easily as a lawyer. *Id.* at 109-10. "Pro se litigants are required to follow the rules of civil procedure and easily-understood Court deadlines." *Mooney v. Cleveland Clinic Foundation*, 184 F.R.D. 588, 590 (N.D. Ohio 1999).

screening form." *Id.* An inmate with an emergency medical problem will be transported to an emergency facility, while inmates with a non-emergency medical need will be given a medical request form to complete, which will be forwarded to the Jail Nurse for evaluation and appropriate treatment. *Id.* Policy No. 29 provides that the Jail Nurse will address the request for medical treatment form at the next "sick call." *Id.* At that time, the nurse will evaluate the illness and need for medications. *Id.* The nurse will use this information to consult with the Jail Physician to provide appropriate treatment. *Id.*

Plaintiff does not dispute the existence of the procedures. The record reflects that the procedures were followed: a medical screening form was completed on his arrival at the jail; he saw the nurse on December 12, 2003 and January 5, 2004; he saw the doctor on January 9, 2004;; he received an x-ray; and he received daily doses of Vicodin from January 9, 2004 through January 28, 2004. It is undisputed that Nurse Mullins responded to plaintiff's first request for medical attention, that he saw a doctor four days after complaining of blood in his urine, that he received a back x-ray, and that he received Darvocet after seeing the doctor. Although plaintiff complained of blood in his urine, he failed to cooperate with the medical providers by providing urine samples on two occasions. These visits and treatments contradict plaintiff's claim that the jail "denied me medical treatment for 30 days even after numerous requests." Finally, plaintiff presents no evidence that other jail detainees were denied medical treatment.

Viewing the facts in the light most favorable to plaintiff, there is no evidence of a "clear and persistent pattern" of mistreatment of detainees sufficient to state a cause of action against the Sheriff's Department or the County. *See Doe*, 103 F.3d at 508.

## V.     RECOMMENDATION

Accordingly, I respectfully recommend that defendant Van Buren Sheriff Department's motion for summary judgment (docket no. 37) be **GRANTED**.

Dated:  December 11, 2006                             /s/ Hugh W. Brenneman, Jr.
                                                                            Hugh W. Brenneman, Jr.
                                                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).