UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN E. SNYDER,

    Plaintiff,

Case No. 1:05-CV-809

Hon. Gordon J. Quist

vs.

TROOPER LINCOLN MILLER,
*et al.*,

    Defendants.
            /

**REPORT AND RECOMMENDATION**

Plaintiff filed a pro se civil rights action against defendants pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendant Michigan State Troopers Miller, Gorham and Sell (docket no. 54). Defendants' motion is unopposed.

  **I.**  **Plaintiff's Complaint**

Plaintiff's claims arise from his arrest on December 9, 2003 and his subsequent detention in the Van Buren County Jail. Plaintiff filed suit against six defendants: Michigan State Police Troopers Miller, Gorham and Sell; Covert Township Police Officer Freitag; South Haven Police Officer Thompson; and, the Sheriff's Department.

Plaintiff's suit is based upon the following allegations (in his words):

> On Dec. 9th, 03 in the village of South Haven, Van Buren Co. I was arrested and already in custody, handcuffed behind my back, helpless. When 5 officers used excessive force/improper police conduct, which caused injuries. These injuries have affected my ability to function normally, as I once did and could very well affect me the rest of my life.
>
> Also the Van Buren County Sheriff's Dept (Jail) denied me medical treatment

>for 30 days even after numerous requests.
>
>My rights were violated in both incidents and I didn't deserve either.

Compl. at ¶ V.  The court previously dismissed plaintiff's claims against defendants Freitag, Thompson, and Van Buren County Sheriff's Department.  Plaintiff's sole remaining claim is one for excessive force against the three Michigan State Troopers.

## II.     Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## III.    Discussion

### A.    Plaintiff's excessive force claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any

right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff claims that defendants Miller, Gorham and Sell used excessive force to arrest him. The use of excessive force by law enforcement officials in making an arrest may give rise to a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment. *See Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999). Whether an officer has used excessive force in effecting an arrest depends on whether the officer's conduct is "objectively reasonable" in light of the facts and circumstances surrounding the arrest, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *See Graham v. Connor*, 490 U.S. 386, 396-397 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Whether a particular use of force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The extent of the injury is not a crucial factor in determining an excessive force claim under the Fourth Amendment. *See Bass*, 167 F.3d at 1046 n. 1. However, not every push or shove violates the Fourth Amendment, even if it may later seem unnecessary in the peace of a judge's chambers. *See Graham*, 490 U.S. at 396.

### B. The events of December 9, 2003

Plaintiff's claims arise from events that occurred on the evening of December 9, 2003 in South Haven, Michigan. Plaintiff testified that earlier that day, he drank "eight, ten, maybe twelve beers" and smoked "a joint or something" of marijuana. Snyder Dep. at 50, 54 attached to Defendants' Brief as Exh. 6. Plaintiff stated that "I already knew I was going to be serving prison time for my probation violation," so he was not "worried about retail fraud or anything." *Id.* at 54. Plaintiff stated that he had an outstanding warrant and could not work. *Id.* at 51. Plaintiff admits that he took candy and donuts from the convenience store, which he described as "my way of turning myself in" and dealing with the warrant "on my terms." *Id.* at 51-52. Plaintiff's "line of thinking that night" was that he would get drunk, get stoned, steal things from a convenience store and have someone call the police. *Id.* at 55-56.

Plaintiff testified that when the police arrived, "I let them arrest me." *Id.* at 56. In plaintiff's words:

> I was standing outside the store and they came up, and I let them pat me down and put handcuffs on me. I didn't resist or obstruct in any kind of way.

*Id.* at 56-57. Plaintiff further testified that things deteriorated after that point:

Q. Then what happened?

A. Then they were taking me to transport me to the -- to wherever they were going to take me. I asked how much was my bond or whatever, and it just seemed to irritate them or something. I asked them again, and the next thing I know they took me to the ground.

Q. Who took you to the ground?

A. The State Troopers.

Q. Okay. That would be Miller and either Sell or Gorham, but you don't know which one, is that correct?

4

> A. That is correct.
>
> Q. And how did they take you to the ground?
>
> A. Well, I was already handcuffed behind my back, so they just basically slammed me to the ground.
>
> Q. Face first or stomach first? I need details on that.
>
> A. I think more like on the side or whatever, and then after that I took a pretty good shot. I don't really remember too much after that.
>
> Q. What do you mean you took a pretty good shot?
>
> A. Well, I mean that the lights went out for a little while.
>
> Q. As a result of what, being taken down?
>
> A. Well, yes.
>
> Q. Did you hit your head on something?
>
> A. Just the impact.

*Id.* at 64-66. Plaintiff further testified that he remembers being handcuffed behind the back, being led around like a horse and "the next I know I'm laying there disoriented, just wondering what the hell happened." *Id.* at 66.

The night manager at the convenience store stated in an affidavit that she received complaints about plaintiff pan-handling in the front of the store, and that she called 911 after she saw him "stuffing product down the front of his pants." Emenhiser Aff. at ¶ 1, attached to Defendants' Brief as Exh. 1. She saw Trooper Miller confront plaintiff, whom she described as "intoxicated," and that plaintiff would not give personal information to Miller. *Id.* at ¶ 2. She saw Trooper Miller recover "stolen product" and "some marijuana" from plaintiff, and then "observed the shop-lifter [i.e., plaintiff] stumble to the ground and the police officer appeared to fall with him." *Id.* at ¶ 3.

Trooper Miller and plaintiff fell "very close to the police vehicle." *Id.*

Trooper Miller stated in an affidavit that plaintiff was dispatched to the convenience store in response to a complaint about a pan-handler, whom he identified as plaintiff. Miller Aff. at ¶¶ 1-2, attached to Defendants' Brief as Exh. 2. Plaintiff was uncooperative and refused to tell Miller his name. *Id.* at ¶ 2. Plaintiff was eating a cookie and appeared to be "highly intoxicated." Id. at ¶ 2. Plaintiff's pants appeared to be stuffed with something, and after a pat down, Miller found two bags of marijuana, as well as cookies, doughnuts and candy from the convenience store. *Id.* at ¶ 3. Miller arrested and handcuffed plaintiff. *Id.* Miller escorted plaintiff to the patrol car, but plaintiff refused to get in the car. *Id.* at ¶ 4. In Miller's words:

> After refusing several lawful commands from me to get in the patrol car, I tried to physically place [plaintiff] in the car. [Plaintiff] resisted and tried to push his way past me. In response, I wrapped my arms around [plaintiff] and rolled to the ground with him. I used my radio to call dispatch to request officer assistance. While I waited for back-up to arrive, I stayed on the ground kneeling next to [plaintiff].

*Id.*

Trooper Sell stated in an affidavit that he arrived at the scene about two minutes after Trooper Miller's call, the same time as Trooper Gorham and Officers Freitag and Thompson. Sell Aff. at ¶¶ 2-3, attached to Defendants' Brief as Exh. 3. Trooper Sell stated his involvement as follows:

> Trooper Miller requested assistance in removing [plaintiff] from the scene. I assisted [plaintiff] from the ground and placed him in my patrol vehicle. I then transported [plaintiff] to the post for processing.

*Id.* at ¶ 4.

Similarly, Trooper Gorham stated in an affidavit that he arrived at the scene at about the same time as Trooper Sell and Officers Freitag and Thompson. Gorham Aff. at ¶ 3, attached to

Defendants' Brief as Exh. 4.  Trooper Gorham states that Trooper Sell assisted plaintiff from the ground and placed him in Sell's vehicle.  *Id.* at ¶ 4.

Finally, Emenhiser, Miller, Sell, and Gorham stated in their affidavits that no officer punched, kicked or struck plaintiff at any time.  Emenhiser Aff. at ¶ 5; Miller Aff. at ¶ 7; Sell Aff. at ¶ 5; Gorham Aff. at ¶ 5.

### C. Plaintiff's convictions

On December 22, 2003, plaintiff was convicted of attempting to assault, batter, wound, resist, obstruct, oppose or endanger Trooper Miller; possession of marijuana; and third degree retail fraud (i.e., stealing property for sale at a price less than $200.00).  *See* Certificates of Conviction and Plea Trans. attached to Defendants' Brief as Exh. 6.

### D. Plaintiff's claims barred under *Heck*

Defendants contend that plaintiff's excessive force claim should be dismissed pursuant to the rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), which "bars § 1983 plaintiffs from advancing claims that, if successful, 'would necessarily imply the invalidity' of a prior conviction or sentence."  *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005), *quoting Heck*, 512 U.S. at 487.

The record reflects that plaintiff was convicted of attempting to "assault, batter, wound, resist, obstruct, oppose, or endanger Trooper Miller."  Plea Trans. at 4.  Plaintiff pled no contest to the charge.  *Id.* at 6.  The court made the following findings to support the plea:

> [O]n or about December 9, 2003, Trooper Miller was dispatched to the Village Market in South Haven Township, Van Buren County.  He was in uniform.  He's an officer with the Michigan State Police, that you had reason to know was performing his duties.  That you were highly intoxicated, but you knew enough of what was going on at the time.  You refused to get into his car and began to fight with him about getting in the patrol car.

> On a pat down search, a baggie of marijuana was found in your right pocket, and in your left pant pocket was found a bag of candy. Let's see, and there were a couple of other items that were taken from Village Market without paying for them, and the value of those items was less than $200.00.
>
> I find after reviewing the police report in this matter, that there's a sufficient factual basis to accept your no contest plea, and I do find you guilty beyond a reasonable doubt on all three counts. Your plea is knowingly, voluntarily, and understandingly made.

*Id.* at 6-7.

Plaintiff's conviction attempting "to assault, batter, wound, resist, obstruct, oppose, or endanger Trooper Miller," arose from his refusal to get into the patrol car. Plaintiff's claim that "I didn't resist or obstruct in any kind of way" and that one or more defendants "slammed me to the ground" without any provocation, necessarily implies the invalidity of plaintiff's conviction for attempting to assault Miller, the arresting officer. *See, e.g., Cummings*, 418 F.3d at 682-83 (an arrestee's success on an excessive force claim necessarily implies the invalidity of a state misdemeanor assault conviction for struggling with the arresting officers); *Schreiber v. Moe*, 445 F. Supp. 2d 799, 814 (W.D. Mich. 2006) (plaintiff's misdemeanor conviction for attempting to assault, resist or obstruct a police officer was inextricably intertwined with the excessive force claim such that success on the constitutional claim would imply the invalidity of the state court conviction under *Heck*.).

The court recognizes that plaintiff was convicted of attempting to assault or obstruct only Trooper Miller. However, it appears to the court that plaintiff cannot succeed in his claims against the other two troopers, Sell or Gorham, without invalidating this conviction. Plaintiff's only claim to excessive force is that he was "slammed" to the ground by Miller and another officer, i.e.,

8

either Sell or Gorham.[1] This lawsuit is premised upon the allegation that Trooper Miller and another trooper pushed plaintiff to the ground while he was handcuffed and being led to a patrol car. Because the "other" trooper allegedly assisted Miller in performing this single act of excessive force, and the alleged excessive force was inextricably intertwined with plaintiff's attempted assault of Miller, the court views the acts of both Miller and the "other" officer as constituting a single response to plaintiff's attempt to assault or obstruct Miller. Accordingly, plaintiff's § 1983 claim against defendants Miller, Gorham and Sell should be dismissed.

## V.  RECOMMENDATION

I respectfully recommend that the unopposed motion for summary judgment filed by defendant Michigan State Troopers Miller, Gorham and Sell (docket no. 54) be **GRANTED** and the complaint be **DISMISSED.**


Dated:  April 18, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                    Hugh W. Brenneman, Jr.
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[1] In this regard, the court notes that Ms. Emenhiser, and Troopers Miller, Sell and Gorham, state in their affidavits that Sell and Gorham arrived after plaintiff was on the ground.